AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original  ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
**8/1/25**
CENTRAL DISTRICT OF CALIFORNIA
BY ___ MW ___ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

FILED
CLERK, U.S. DISTRICT COURT

**AUG – 1 2025**

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES OF AMERICA
Plaintiff,

v.

CHUAN GENG, and
SHIWEI YANG,
            Defendants.

Case No.   2:25-mj-04821-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Cynthia Velasco, the complainant in this case, state that the following is true to the best of my

knowledge and belief. On or about July 31, 2025 in the county of Los Angeles in the Central District of

California, the defendant violated:

> *Code Section* 4819 (a)(1), (a)(2)(D), (b)    *Offense Description*
> 50 U.S.C. §§ 4801-4852                        **Export Control Reform Act**
> 18 U.S.C. § 371                               Conspiracy
> 15 C.F.R. § 736. 2(b)(1), and 774.Sum, No. 1

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Cynthia Velasco, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 8/1/2025

*Judge's signature*

City and state:  Los Angeles, California          Hon. Jacqueline Chooljian, U.S. Magistrate Judge
                                                  *Printed name and title*

AUSA: Colin Scott x13159

**AFFIDAVIT**

I, CYNTHIA VELASCO, being duly sworn, declare and state as follows:

## I.    INTRODUCTION

1.    I am a Special Agent ("SA") with the United States Department of Commerce ("DOC"), Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE"), and have been so employed since June 2011.  I am currently assigned to the Los Angeles Field Office, where I investigate potential violations of federal laws governing the transfer from the United States of items, information, and defense articles and services that are regulated by the BIS.  These items include dual-use commodities, that is, commodities that can be used for both commercial and military purposes by adversaries or potential adversaries of the United States.

2.    During my career as an OEE SA, I have received both formal and informal training from OEE and other institutions regarding federal laws and regulations governing the export of items from the United States, as well as the laws and proper investigation procedures relating to electronic communications, Internet service providers, and associated technology.  I have participated in numerous investigations of violations of United States laws relating to the unlawful export of items, and defense articles and services, restricted for export for reasons of national security, foreign policy, anti-terrorism and embargoed destinations.  Based on my training and experience, I am familiar with the tactics and methods used by individuals who

i

commit violations of federal export laws and the other criminal
violations often associated with these violations, such as
international money laundering.

## II.  PURPOSE OF AFFIDAVIT

3.    This affidavit is made in support of a criminal
complaint against ██████ ███████████ CHUAN GENG, and
SHIWEI YANG for Conspiracy to Violate the Export Control Reform
Act ("ECRA") and the Export Administration Regulations ("EAR")
in violation of 50 U.S.C. §§ 4819(a)(1), (a)(2)(D), and 4819(b);
and 15 C.F.R. parts 736.2(b)(1) and 774, Supp. No. 1.

4.    The facts set forth in this affidavit are based on my
personal observations, my training and experience, and
information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show merely that there
is sufficient probable cause for the requested complaints and
warrants and does not purport to set forth all my knowledge of
or investigation into this matter.  Unless specifically
indicated otherwise, all conversations and statements described
in this affidavit are related in substance and in part only, and
all dates and times are on or about those indicated.

## III.  SUMMARY OF PROBABLE CAUSE

5.    From in or about October 2022 to July 2025, ███████████
█████████ Chuan Geng ("GENG"), and Shiwei Yang ("YANG") through
their company ALX Solutions, did knowingly and willfully
conspire to export and cause to be exported from the United
States to the People's Republic of China various items on the
Commerce Control List, including graphic processing units,

without first obtaining the required license or authorization from the United States Department of Commerce in violation of 50 U.S.C. §§ 4819(a)(1), (a)(2)(D), and 4819(b); and 15 C.F.R. parts 736.2(b)(1) and 774, Supp. No. 1.

6.    As described more fully below, a review of export records, business records, and company websites indicates that a December 10, 2024 shipment and at least 20 previous shipments by ALX Solutions involved exports from the United States to companies that appear to be shipping or freight-forwarding companies located in countries such as Singapore and Malaysia, which, based on my training and experience, are commonly used as transshipment points to China. Additionally, ALX Solutions has not received payments from the entities to which they have purportedly exported goods.  Rather, ALX Solutions has received numerous payments during the relevant time periods from entities in Hong Kong and China.

7.    Specifically, as discussed further below, on December 10, 2024, ALX Solutions shipped GPUs and graphic cards to a freight forwarding company in Malaysia, United Despatch, in a shipment bearing electronic export information ("EEI"), Internal Transaction Number ("ITN") X20241206069279, which was detained and inspected by United States Customs and Border Protection ("CBP").  The shipment was labeled as containing graphic processing units subject to EAR99 when, in fact, it contained NVIDIA H100 GPUs and NVIDIA PNY GE Force RTX 4090 GPUs categorized as ECCN 4A090.a on the Commerce Control List, meaning that they required a license for export to China.

Neither ALX Solutions nor ▮▮▮▮ GENG, or YANG applied for or obtained a license from the Commerce Department.

8.    On July 31, 2025, law enforcement searched the Klingerman Office pursuant to a federal warrant and found additional evidence of the export scheme.  Specifically, law enforcement seized the phones of GENG and YANG which revealed incriminating communications between YANG, GENG, and ▮▮▮▮ including communications about shipping export-controlled chips to China through Malaysia to evade U.S. export laws.

### IV.  LEGAL BACKGROUND

**A.    Export Control Reform Act ("ECRA") and the Export Administration Regulations ("EAR")**

9.    Pursuant to ECRA, the Department of Commerce reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the EAR, 15 C.F.R. parts 730-774.  In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States.

10.    The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another.

11.    The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1.  Items on the CCL are

categorized by an Export Control Classification Number ("ECCN") based on their technical characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

12. NVIDIA H100 GPUs and NVIDIA PNY GE Force RTX 4090 GPUs are both classified under ECCN 4A090.a. Items classified under ECCN 4A090.a are controlled for regional stability reasons and generally require a license for export to China, including Hong Kong. See 15 C.F.R. § 742.6(a)(6)(iii)(A).

13. Items that fall within the scope of the EAR but are not specifically controlled for export, are given the classification of "EAR99." EAR99 items generally consist of low-technology consumer goods and do not require a license in most situations. Due to the very low controls of EAR99, entities trying to circumvent United States export laws sometimes falsely declare dual-use items for export as EAR99 to avoid government scrutiny.

14. An ultimate consignee is defined in 15 C.F.R. part 748.5(e) as "the principal party in interest located abroad who receives the exported or reexported items. The ultimate consignee is not a forwarding agent or other intermediary, but may be the end-user."

15. If a license is required for a transaction subject to the EAR and the transaction does not qualify for a specific license exception, a U.S. person must submit a license application to BIS and receive a license prior to engaging in the transaction. The

license may be subject to certain terms and conditions defined by BIS or other federal agencies.

16.  It is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to ECRA. 50 U.S.C. § 4819.

### B.  Advanced Computing/Supercomputing Interim Final Rule ("AC/S IFR")

17.  Beginning on or around October 7, 2022, BIS began amending the EAR to implement new controls on advanced computing integrated circuits ("ICs"), computer commodities that contain ICs, and certain semiconductor manufacturing items.  See 15 C.F.R. § 744.23; 87 FR 62186.  In addition, BIS imposed additional export controls on certain advanced computing semiconductor chips (e.g., chips, advanced computing chips, integrated circuits, or ICs), transactions for supercomputer end-uses, and transactions involving certain entities on the Entity List.  These restrictions applied to high-performance ICs that are useful in data center processing and artificial intelligence.  The restrictions applied to China (including Hong Kong).  On or about October 25, 2023, BIS released two interim final rules (effective on November 17, 2023) that expanded export controls related to advanced computing and semiconductors, aimed at China and other national security concern countries.

### C.   BIS Requires a License to Export NVIDIA H100 GPUs and NVIDIA PNY GE Force RTX 4090 GPUs to China

18.   Based on my training and experience, various government publications, and news articles, I know that GPUs are computer electronic parts that are specialized circuits that process video and graphics and are used in many electronic devices, such as computers, smartphones, and game consoles.

19.   According to the World Economic Forum, "the NVIDIA H100 is the most powerful GPU chip on the market and is designed specifically for AI applications.  The H100 contains 80 billion transistors, which is 6 times more than its predecessor, the A100 chip.  This makes it capable of processing large amounts of data much faster than other GPUs.  AI applications require a lot of processing power to train and run.  The H100's powerful computing capabilities make it ideal for these applications.  For example, the H100 can be used to train large language models (LLMs), which are AI models that can generate text, translate languages, and answer questions in a human-like way.  The H100 can also be used to develop self-driving cars, medical diagnosis systems, and other AI-powered applications."[1]

20.   According to publicly available information, the NVIDIA PNY GE Force RTX 4090 is a video graphics card capable of supporting virtual worlds and AI graphics.[2]

---

[1] See https://www.weforum.org/videos/what-is-h100-gpu-chip-ai-nvidia/ (last visited May 19, 2025).

[2] See https://www.pny.com/pny-geforce-rtx-4090-24gb-verto-triple-fan-led (last visited May 19, 2025)

21.   Based on my review of various records and my training
and experience, and as discussed in more detail below, I know
that the NVIDIA H100 GPU and NVIDIA PNY GE Force RTX 4090 GPU
are subject to license requirements for export to China and
certain other destinations.   According to a public United States
Securities and Exchange Commission filing by NVIDIA, dated
October 17, 2023, NVIDIA has acknowledged the NVIDIA H100 GPU
and NVIDIA PNY GE Force RTX 4090 GPU are subject to license
requirements for export to China and other destinations.

**D.    Automated Export System ("AES")**

22.   The Department of Commerce, through the United States
Census Bureau, requires the exporter (United States principal
party in interest) or agent (i.e., freight forwarder) to file
electronic export information ("EEI") to the Automated Export
System ("AES"), pursuant to 13 U.S.C. § 305, the EAR, and 15
C.F.R. part 30 (the Foreign Trade Regulations).   The purpose of
these requirements is to strengthen the United States
government's ability to prevent the export of certain items to
unauthorized destinations and end-users.

23.   The AES aids in targeting, identifying, and when
necessary, confiscating suspicious or illegal shipments prior to
exportation.   See 15 C.F.R. part 30.1(b).   At all times relevant
to the matters alleged herein, an EEI was required to be filed
for, among other things, the export of commodities valued over
$2,500 per the Harmonized Tariff Schedule of the United States
of America ("HTSUSA") commodity classification code or any
commodity requiring an export license, and was required to

contain, among other information, the names and addresses of the parties to the transaction, and the description, quantity, and value of the items exported.  15 C.F.R. part 30.6(a).

24.  The EEI must be accurate.  Pursuant to the EAR, Part 758.1, the person who transmits EEI to the AES, whether exporter (United States principal party in interest) or agent, is responsible for the truth, accuracy, and completeness of the EEI, except insofar as that person can demonstrate that he or she reasonably relied on information furnished by others.

## V.   STATEMENT OF PROBABLE CAUSE

25.  The information set forth below is based upon my review of investigative reports, export records, publicly available information, my discussions with other law enforcement agents, and my knowledge, training, and experience.

### A.   BIS Requires a License to Export NVIDIA H100 GPUs and NVIDIA PNY GE Force RTX 4090 GPUs to China

26.  Based on my training and experience, various government publications, and news articles, I know that GPUs are computer electronic parts that are specialized circuits that process video and graphics and are used in many electronic devices, such as computers, smartphones, and game consoles.

27.  According to the World Economic Forum, "the NVIDIA H100 is the most powerful GPU chip on the market and is designed specifically for AI applications.  The H100 contains 80 billion transistors, which is 6 times more than its predecessor, the A100 chip.  This makes it capable of processing large amounts of data much faster than other GPUs.  AI applications require a lot

of processing power to train and run.  The H100's powerful computing capabilities make it ideal for these applications. For example, the H100 can be used to train large language models (LLMs), which are AI models that can generate text, translate languages, and answer questions in a human-like way.  The H100 can also be used to develop self-driving cars, medical diagnosis systems, and other AI-powered applications."[3]

28.    According to publicly-available information, the NVIDIA PNY GE Force RTX 4090 is a video graphics card capable of supporting virtual worlds and AI graphics.[4]

29.    Based on my review of various records and my training and experience, and as discussed in more detail below, I know that the NVIDIA H100 GPU and NVIDIA PNY GE Force RTX 4090 GPU are subject to license requirements for export to China and certain other destinations.  According to a public United States Securities and Exchange Commission filing by NVIDIA, dated October 17, 2023, NVIDIA has acknowledged the NVIDIA H100 GPU and NVIDIA PNY GE Force RTX 4090 GPU are subject to license requirements for export to China and other destinations.

        **a.**      **████**    **GENG, and YANG Control ALX Solutions**

30.    ALX Solutions Inc. is a closely held corporation with only three known employees: YANG, ████ and GENG. ALX Solutions Inc. is located at 10922 Klingerman Street, #1, El Monte, California 91733 (the "Klingerman Office").  ████ is the

---

[3] See https://www.weforum.org/videos/what-is-h100-gpu-chip-ai-nvidia/ (last visited May 19, 2025).

[4] See https://www.pny.com/pny-geforce-rtx-4090-24gb-verto-triple-fan-led (last visited May 19, 2025)

registered agent of ALX Solutions. Notably, ALX Solutions was
established on October 27, 2022; approximately 20 days after BIS
began amending the EAR to implement new controls on advanced
computing integrated circuits. A January 2025 Statement of
Information for ALX Solutions listed three employees: (1) ███
Chief Executive Officer, (2) Chuan Geng ("GENG"), Chief
Financial Officer, and (3) Shiwei Yang ("YANG"), Secretary.
███ GENG and YANG are all citizens of China. ███ and GENG
are both lawful permanent residents in the United States and
YANG is a visa-overstay. ALX Solutions has no publicly-
available information and does not appear to have a website.
However, a website for ALX-Cloud[5] states that it is a subsidiary
of ALX Solutions with experience in the server and cloud
computing industry. A review of the ALX Solution email accounts
for ███ GENG, and YANG show that these three individuals
exercise full decision-making authority and shipment
coordination for ALX Solutions.

**B.    The "9279 Shipment": ALX Solutions Exported NVIDIA
       GPUs Using the Wrong ECCN**

31.   In December 2024, a shipment by ALX Solutions was
presented for export and designated as ITN: X20241206069279 (the
"9279 Shipment"). I have reviewed the EEI for the 9279
Shipment. The EEI for the 9279 Shipment identified the "U.S.
Principal Party" as ALX Solutions with an address of the
Klingerman Office; the "Forwarding Agent" as Uniglobe Inc., with
an address of 17238 S. Main St. Gardena, California 90248; and

---

[5] See www.alx-cloud.com (last visited 2/6/2025).

the "Ultimate Consignee" as United Despatch Agent SDN BHD, with an address of NO 54 Jalan 11 Kosm, Mopleks, Bandar Baru Salak Tinggi, Sepang Selangor, Malaysia.  The EEI for the 9279 Shipment declared the shipment contained 117 Graphic Cards with a value of $176,500 and two Graphical Processing Unit Base Boards, with a value of $4,000.  The EEI for the 9279 Shipment classified both commodities as EAR99, indicating that no BIS license would be required for export to Malaysia.

32.  On December 10, 2024, CBP officers intercepted and inspected the 9279 Shipment.  CBP provided me with photographs of the commodities contained in the 9279 Shipment and various shipping documents.  The shipping documents CBP provided to me included an ALX Solutions invoice, a Shipper's Letter of Instruction to freight forwarder Uniglobe Inc. ("Uniglobe"), and a Cargo Manifest.

33.  With respect to the CBP-provided shipping documents for the 9279 Shipment:

a.  The ALX Solutions Invoice, dated May 13, 2025, contained the Klingerman Office as the address, a phone number, and an email address.  The ALX Solutions Invoice identified the "Ship to" entity as United Despatch Agent.  The ALX Solutions Invoice identified the items shipped as 115 RTX 4090s, two H100s, and two Baseboards, for a total of value of $180,500.00.

b.  The Shipper's Letter of Instruction identified ALX Solutions as the U.S. Principal Party in Interest, the ultimate consignee as United Despatch Agent in Malaysia, and the Shipper as Uniglobe.  The document was electronically signed by

YANG from ALX Solutions, on December 5, 2024. It does not include an email address.

　　　　c.　The Cargo Manifest identified the "Shipper Name" as ALX Solutions, the "Consignee Name" as United Despatch, and the "From" entity as Uniglobe. The Cargo Manifest identifies the "nature of goods" as two pallets of "Computer Parts." It includes the name YANG as an apparent contact person for ALX Solutions.

　　34. I also reviewed the photographs from CBP's inspection of the 9279 Shipment. Based on my review of the photographs and reports about the photographs, as well as conversations with other law enforcement officers, I confirmed the commodities included in the 9279 Shipment were NVIDIA H100 GPUs and NVIDIA PNY GE Force RTX 4090 GPUs.

　　35. I submitted license determinations to BIS and, on January 29, 2025, received determinations that confirmed that NVIDIA H100 GPUs and NVIDIA PNY GE Force RTX 4090 GPUs are both classified under ECCN 4A090.a, which meets the definition of ICs under AC/S IFR. Items classified under ECCN 4A090.a are controlled for regional stability reasons and generally require a license for export to China, including Hong Kong. See 15 C.F.R. § 742.6(a)(6)(iii)(A).[6]

---

[6] Certain license exceptions to the licensing requirement are available for exports of items classified under ECCN 4A090.a. However, based on available information, investigators do not believe that any such exceptions apply to the export at issue. Further, neither ALX Solutions nor Uniglobe relied on any license exception for the export, as indicated by the use of the "NLR" code.

36. Because ALX Solutions classified the commodities in the EEI as EAR99, not ECCN 4A090.a, I concluded that ALX Solutions included the incorrect information for the EEI for the 9279 Shipment. While a BIS export license would not be required for export of such commodities to Malaysia, a license would be required for export to China. I also know based on my training and experience, that entities trying to circumvent United States export laws sometimes falsely declare dual-use items for export as EAR99 to avoid government scrutiny. For that reason, and because exporters are required to provide accurate information on EEIs, I believe ALX Solutions may have falsely declared the GPUs as EAR99 while knowing the GPUs should have, in fact, been classified as ECCN 4A090.a.

**C.   United Despatch Agent Declares the GPUs Will Be Used for Reasons at Odds with the Company's Line of Business**

37. Another document I reviewed regarding the 9279 Shipment was a BIS-711 Form. Based on my training and experience, I know that a BIS-711 Form, titled a "Statement by Ultimate Consignee and Purchaser," is an official BIS government form, on which the purchaser and the ultimate consignee (i.e., the end-user of the product) declares among other things the following: the ultimate consignee's name and contact information; the disposition or use of items by the ultimate consignee; and the nature of business of the ultimate consignee. The form also bears the signature of an official of the ultimate consignee, the name of purchaser, and the name of exporter. A BIS-711 Form also calls for the "Disposition or Use of Items by

Ultimate Consignee" and the "Nature of Business of Ultimate Consignee named."  The BIS-711 Form includes "possible choices" for the nature of business, including "broker, distributor, fabricator, manufacturer, wholesaler, retailer, value added reseller, original equipment manufacturer, etc."  The BIS-711 also calls for "any other information not appearing elsewhere on the form such as other parties to the transaction, and any other material facts that may be of value in considering license applications supported by this statement."  While BIS does not require the ultimate consignee to provide a BIS-711 Form, it is an official government form, and therefore, an official statement made to the United States government.

38.  Uniglobe provided law enforcement a completed BIS-711 Form in connection with the 9279 Shipment.  I reviewed that BIS-711 Form, which contained the following relevant information: First, the BIS-711 Form listed United Despatch Agent as the ultimate consignee and ALX Solutions as the exporter.  Second, United Despatch Agent declared it would use the items as "capital equipment" and "in the form in which received in a manufacturing process in [Malaysia] and will not be reexported or incorporated into an end product."  Third, United Despatch Agent declared the nature of their business as "trading" and their relationship with the United States exporter as "trading customer."  Finally, the BIS-711 Form was signed by United Despatch Agent Executive Director Mohd Hanis Alimin and ALX Solutions ███████████

39.    Despite its representation on the BIS-711 Form related to the 9279 Shipment, United Despatch Agent's line of business does not appear to be manufacturing.  According to its website,[7] United Despatch Agent is a freight forwarder founded in 1984 and based in Malaysia.  The company reports to be a freight contractor handling shipments out of Malaysia and shipping items such as electronic components and telecommunications equipment.[8] The website advertises United Despatch Agent as servicing Europe, Africa, America, and Asia, including over 10 Chinese cities.

40.    I conducted a Google Maps search of United Despatch Agent's address, which I identified from the various shipping documents described above.  Google Maps showed that United Despatch Agent is located in a small 2-story building in between two other business.  The building bears a sign containing the name "United Despatch Agent."  The building appears to be old and unkempt and does not appear to be a location for manufacturing or a location that employs expensive and technologically advanced GPUs.  Below is a screen capture of the Google Maps Street View.[9]

---

[7]    See https://www.udaloghq.com/our-services.html (last visited 2/6/2025).

[8]    See https://www.udaloghq.com/about-us.html (last visited 2/6/2025).

[9]    See maps.google.com (last visited 2/6/2025).



D.  **Review of Export History Data Shows United Despatch Agent is Often Declared as a Freight Forwarder, Not an End User.**

41.  According to the EAR, freight companies that receive exports overseas on behalf of end users are required to be declared in the EEI as the "intermediate consignee," not the "ultimate consignee."  The intermediate consignee is the name and address of the entity that acts in a foreign country as an agent for the principal party in interest or the ultimate consignee for the purpose of effecting delivery of the export shipment to the ultimate consignee.  The ultimate consignee is the person, party, or designee that is located abroad and actually receives the export shipment, that is the intended end user of the commodities being exported.  See 15 C.F.R. part 772 and 15 C.F.R. part 30.6.

42.  On January 24, 2025, I conducted a search in the AES.  This search showed that from 2022 to the present, United Despatch Agent has been declared as the intermediate consignee on approximately 26 exports from various United States exporters.  These exports consisted of various commodities, including audio interfaces, electrical machinery and equipment

and parts, medical or surgical instruments and apparatus, and parts for video systems.

43.    On the other hand, from June 2024 to present, United Despatch Agent has been declared as the ultimate consignee on only approximately four exports.  Two of those four exports involved ALX Solutions, including the 9279 Shipment and an August 31, 2024 shipment of a computer server with a value of $80,000.

44.    Based on the number of times United Despatch Agent has been designated an intermediate consignee as opposed to an ultimate consignee, as well as my review of United Despatch Agent's website, I believe United Despatch Agent is functioning as a freight forwarder and not an end-user of exported commodities.  Based on my training and experience, and my understanding of the true nature of United Despatch Agent's business, I also believe United Despatch Agent may have been intentionally listed as the ultimate consignee in the 9279 Shipment to obfuscate the true destination and end use.

**E.    ALX Solutions Did Not Obtain Any BIS Licenses for the 9279 Shipment**

45.    As noted above, the commodities in the 9279 Shipment are controlled on the CCL under ECCN 4A090.a.  As such, a BIS export license is required to export these commodities to an end-user in China (though not to an end-user in Malaysia).  On February 4, 2025, I reviewed the BIS license database, which showed ALX Solutions did not apply for or obtain any BIS export licenses with respect to the commodities in the 9279 Shipment.

In fact, ALX Solutions, and its associated employees ██████

GENG, or YANG, have never applied for a BIS export license.

### F.   For Several ALX Solutions Shipments, a Chinese Entity Appeared to Direct and Pay the Freight Forwarder Regarding the Facilitation of the Export.

46.   I obtained and reviewed records from Uniglobe relating

to eight other exports initiated by ALX Solutions in 2024.  For

each of these transactions, Uniglobe served as the freight

forwarder.  For these eight exports, the records list DID

(Beijing) Supply Chain Management Co. Ltd. ("DID Beijing"),

which is located in Beijing, China, as the Agent[10] on the

Uniglobe Debit Note.[11]  Based on my review of Uniglobe records,

for at least six of these transactions, DID Beijing communicated

directly with Uniglobe regarding the facilitation of the

exports.  For example, in one export, an employee of DID Beijing

emailed Uniglobe and stated the following: "Please arrange to

ship the goods mentioned by Ms. Yang to Singapore, not Hong

Kong. For shipping information/SLI, please contact Ms. Yang or

+12489713580 whatsapp ██████████   Direct order Consignee:

Royalnest trading pte ltd."

47.   As explained above, ██████ is the CEO of ALX Solutions.

Based on the aforementioned email, I believe that the Chinese

---

[10] Based on my training and experience, an Agent is the
customer of the freight forwarder, they are the party hiring the
freight forwarder for its services of facilitating an export
from the US to a non-US entity.

[11] Based on my training and experience, a debit note is
formal document sent by one party to another, informing the
recipient of the charges for the services being provided.

Agent is confirming that ▮▮▮▮ at ALX Solutions would be aware
of the export scheme and can be contacted if needed by Uniglobe.

48.    Moreover, Uniglobe debit note records show that for at
least six of the eight exports initiated by ALX Solutions,
Uniglobe was paid by DID Beijing, not ALX Solutions or the
designated end user.  Moreover, the EEIs, filed by the freight
forwarder did not declare the exports to be destined to DID
Beijing.  Instead, the following quantities of exports were
declared to be destined to the respective entities: one export
to Royalnest Trading PTE LTD in Singapore, two exports to Hong
Kong Ruidaxingco in Hong Kong, one export to Ningbo Chenlei
Qifei Keji in China, two exports to Bandar Baru Salak Tinggi in
Malaysia, and one export to United Despatch Agent in Malaysia.

### G.    ALX Solutions Provided Misleading Information to Super Micro in Furtherance of their Purchases

49.    I have reviewed records that Super Micro provided to
OEE on or about December 12, 2024.  Records indicate that from
at least August 2023 to July 2024, ALX Solutions purchased
approximately 205 NVIDIA H100 GPUs, classified as ECCN 4a090.a,
from Super Micro.  At the time that ALX Solutions purchased the
NVIDIA GPUs from Super Micro, ALX Solutions provided end user
information to Super Micro declaring the end users included
Metacarbon PTE. LTD ("Metacarbon") in Singapore and Baysherwood
Inc. ("Baysherwood")[12] in Japan.  However, as noted below, it

---

[12] Baysherwood's website, which I have reviewed, states that
its main business activities are "application development,
maintenance and operation."  However, the address listed on
their website appears to be a residential address, not a
*(footnote cont'd on next page)*

appears that ALX Solutions shipped the NVIDIA products to different end users.

50. BIS conducts what are called Post-Shipment Verifications ("PSVs") overseas. PSVs are conducted to verify that U.S.-origin goods were in fact exported and delivered to the declared consignee on export records, such as EEIs. Those checks are completed by DOC, Export Control Officers (ECOs). With respect to several ALX Solutions exports, PSVs revealed that the end users ALX Solution identified to Super Micro were not in fact the true end users.

51. For example, a Super Micro invoice for Order #: 8801284408, dated December 7, 2023, indicates ALX Solutions purchased 106 Super Micro servers (model #: SYS-821GE-TNHR), classified as ECCN 5A992.z,[13] each with a value of $20,000; and 106 NVIDIA DELTA-NEXT HGX GPU, 8 H100 (model #: GPU-NVHGX-H100-88), classified as ECCN 4A090.a, each with a value of $208,000; and other computer accessories. The invoice had a total value of $28,453,855.60. For this purchase, ALX Solutions declared to Super Micro that the end user was Metacarbon in Singapore. However, an end-use check conducted at Metacarbon resulting in DOC being unable to verify that the export-controlled chips actually arrived in Singapore.

52. In November 2024, a BIS ECO in Singapore attempted to conduct a PSV on Metacarbon for the above-mentioned Super Micro

---

business space. See https://baysherwood.jp (last visited 2/6/2025).

[13] ECCN 5A992.z has the same BIS export requirements as ECCN 4A090.a. Therefore, an export of ECCN 5A992.z would require a BIS export license to China.

export from ALX Solutions (Order #: 8801284408). During that PSV, BIS determined that a company named Metacarbon did not exist at the Singapore location listed on the Super Micro export. BIS thus deemed Metacarbon an unreliable recipient of United States goods. The BIS ECO in Singapore provided me the following information: Based on Metacarbon's website and LinkedIn page,[14] the company is described as a blockchain services provider in Singapore, and the company focused on integrating blockchain and Web3 technology into the traditional e-cigarette industry, offering innovative, smart e-cigarette products that promote sustainability and carbon reduction through digital economy principles and smart contracts. Moreover, the director of Metacarbon, Meng Yu, is a Chinese national who previously worked with IBM in China and is also the founder of several technology companies in China. There is no official email address or phone number associated with Metacarbon.

53. Based on my training and experience, I believe the fact that ALX Solutions exported so many GPUs to an entity that could not be verified indicated ALX Solutions was intentionally trying to evade US export laws.

**H.    International Payments to ALX Solutions Also Support that ALX Solutions is Illegally Exporting Goods**

54. A review of records from ALX Solutions' Chase bank account ending in -2202 provided the following information:

---

[14] See https://metacarbon.gitbook.io/metacarbon-white-paper and https://www.linkedin.com/company/metacarbon-pte-ltd/about/ (last visited 2/6/2025).

    a.    The account was created on March 12, 2021.

    b.    The signature cards listed ▇▇▇ and GENG as authorized account holders.

    c.    The account records did not show any payments to ALX Solutions from the companies listed as the Ultimate Consignee of the various ALX Solutions shipments discussed above. For example, the records did not show any payments from United Despatch Agent in Malaysia, Royalnest Trading in Singapore, Greaterheat in Singapore, or Metacarbon in Singapore.

55. A review of federal wire transactions to and from ALX Solutions' account ending in -2202 provided the following information:

    a.    ALX Solutions did not receive wire funds from the companies listed as the Ultimate Consignee of the various ALX Solutions shipments discussed above including: United Despatch Agent in Malaysia, Royalnest Trading in Singapore, Greaterheat in Singapore, or Metacarbon in Singapore. Instead, ALX Solutions received wire funds from various entities in Hong Kong including: Hongkong Hengtongda Development Co. Limited; Daostore International Limited; Giga Computing Technology Co., Ltd.; Good Success Crown International Limited; Jennex Technology Limited; Hua Ke Supply Chain (Hk) Limited; and Hua Ke Logistics (HK) Limited. In addition, ALX Solutions received wires from three other Chinese entities: Aladdin Electronic Technology Co., Limited; Hongkong Taka Trade Limited; and Yangyang Group Co., Limited.

56. Based on my review of open-source information on the internet, I found the following information on some of the above-mentioned Hong Kong and Chinese entities:

a. Daostore International Limited in Hong Kong is a supply chain/logistics company.

b. Yangyang Group Co., Limited in China is connected to Shenzhen Lianyu Supply Chain Management Co., Ltd. of mainland China. Shenzhen Lianyu is involved in supply chain management and logistics services.

c. On February 21, 2025, Hua Ke Supply Chain (HK) Limited changed its name to "Xinlikang Logistics (HK) Limited." Per a report by a Chinese battery manufacturer, Hua Ke Supply China/Xinlikang Logistics is an entity that collects goods and pays for goods on behalf of others (a consignment and payment agent).

d. Hua Ke Logistics (Hk) Limited in Hong Kong is a subsidiary of Shenzhen Xinlikang Supply Chain Management Co., Ltd. Pursuant to a public disclosure filing in 2020, Hua Ke Logistics is not only named as a warehousing and logistics company, but also a payment company in which overseas customers will pay for the items through Hua Ke Logistics.

e. Jennex Technology Limited is headquartered in Hong Kong, with a business focus on wholesale distribution of electronic equipment and parts.

57. Based on my training and experience, this lack of a history of wire transfer payments from the alleged Ultimate Consignees suggests that the above companies are not the true

Ultimate Consignee's but intermediaries who are receiving goods from ALX Solutions and then re-exporting them to the true end user.  The history of wire transfer payments from entities in China also suggests that companies in China are the true end users.

58.  Additionally, I know from reviewing records from WISE, a financial technology company specializing in cross-border transactions, that ALX Solutions received approximately $1,029,396.22 from a China based company Huizho Xinjietong Supply Chain Man ("Huizho").  Specifically, on January 30, 2024, Huizho transferred $1,029,396.22 to a WISE Account #822000875348 (the "5348 Wise Account") belonging to Chunlei Ni, a Chinese national, and registered to ALX Solutions Inc with an address in Denver, Colorado.  The 5348 Wise Account then made two payments: one on January 30, 2024, for $270,000, and one on March 12, 2024, in the amount of $759,396.22, together totaling $1,029,396.22, to ALX Solutions' Chase bank account ending in -2202.

59.  An ALX Solutions invoice, dated January 9, 2024, corresponds with the above payment with a Bill to: Ningbo Chenlei Qifie Technology Ltd and a Ship to: Chunlei Ni in Zhejiang Province, China.  The invoice listed 40 (qty) Nvidia P1010 PCIE Card with a total value of $1,280,000.00 ($32,000 per unit).

60.  Based on my training and experience, Nvidia P1010 is not an actual model name.  However, I know that Nvidia H200 GPU chips, averages a price of $32,000 per unit.  Based on the

quantities and unit price listed in the invoice, it appears that
ALX Solutions changed the description of the Nvidia goods in the
aforementioned invoice to conceal the true commodity in
question.  The Nvidia H200 GPU is classified as ECCN 4A9090.a,
is controlled for regional stability reasons and generally
requires a license for export to China, including Hong Kong.

   **I.**   **Email Search Warrants for Three ALX Solutions;**
       **Employee Email Accounts:** ████████████████████;
       **chuan.g@alx.solution.com; and shiwei.y@alx-**
       **solution.com**

     61.  On June 23, 2025, the Honorable Pedro Castillo, United
States Magistrate Judge, issued a warrant in Case No. 2:25-MJ-
01924, which directed Google LLC ("Google") to provide
information associated with the accounts identified as
████████████████████ (the "█████ ACCOUNT"), chuan.g@alx-
solution.com (the "GENG ACCOUNT"), and shiwei.y@alx-solution.com
(the "YANG ACCOUNT") (collectively the "SUBJECT ACCOUNTS").
Based on my review of Google records for the SUBJECT ACCOUNTS, I
learned the following:

     **a. Subject Accounts Show Evidence of Additional China**
        **Destined Shipments**

     62.  Based on my review of the SUBJECT ACCOUNTS, I saw
evidence of additional shipments to United Despatch, two of
which appear to have been sent to China.  Between March and
April 2025, ALX Solutions exported at least nine shipments to
United Despatch which contained servers and GPUs.  These

shipments likely contained GEFORCE RTX4090 and NVIDIA H100s.[15]
Specifically, I identified and reviewed ALX Solutions invoices
(for the nine exports mentioned above) in the GENG ACCOUNT and

| Date | Item | Quantity | Tracking Number | Destination | | |
|------|------|----------|-----------------|-------------|--|--|
| 3/19 | Gigabyte 4090 | 6 | 1ZJ187D56701219489 | Malaysia | UDA WAREHOUSE | china |
| 3/20 | TUF 4090 | 2 | 1ZJ187D56732117423 | Malaysia | UDA WAREHOUSE | china |
| | MSI 4090 | 2 | | | | |
| 3/21 | A6000 | 1 | 1ZJ187D50426209632 | Hong Kong | | |
| 3/25 | 4090 | 7 | 1ZJ187D56725053461 | Malaysia | KLIA WAREHOUSE | |
| 3/25 | A100 Board | 1 | 1ZJ187D50431367041 | HK | | |
| 3/25 | A100 Board | 1 | 1ZJ187D50435413653 | HK | | |
| 3/26 | 4090 | 5 | 1ZJ187D56716200756 | Malaysia | UDA WAREHOUSE | |
| 3/26 | 4090 | 7 | 1ZJ187D56703961913 | Malaysia | UDA WAREHOUSE | |
| 3/28 | 4090 | 6 | 1ZJ187D56716237995 | Malaysia | UDA WAREHOUSE | |
| 3/28 | 4090 | 4 | 1ZJ187D56731470472 | Malaysia | | |
| 3/31 | 4090 | 3 | 1ZJ187D56739372091 | Malaysia | UDA WAREHOUSE | |
| | 5090 | 1 | | | | |
| 4/1 | 4090 | 3 | 1ZJ187D56709810780 | Malaysia | | |
| 4/1 | 5090 | 1 | 1ZJ187D50407640193 | Malaysia | UDA WAREHOUSE | |
| 4/1 | 5090 | 3 | 1ZJ187D56713351009 | Malaysia | | |

YANG ACCOUNT declaring that "computer parts" were shipped to
United Despatch.  Those nine shipments were declared as under
$2,500 in value and occurred after the detention of the 9279
Shipment.  Two of the invoices were sent from the YANG ACCOUNT
and seven from the GENG ACCOUNT to internationaldocs.us@ups.com.
Based on my training and experience, I know exporters engaged in
criminal activity will undervalue shipments after prior
shipments have been inspected or scrutinized by the U.S.
Government to avoid further scrutiny.

---

[15] NVIDIA H100 chips are categorized as ECCN 3A090 on the
Commerce Control List, meaning that they required a license for
export to China.

63.   I reviewed an excel file (copied below) titled "Shipments" stored in the Google Drive for the YANG ACCOUNT. The excel file contained a list of nine shipments to United Despatch in Malaysia.   Specifically, the list detailed date, item, quantity, UPS tracking number, and destination.   For two shipments, on March 19 and 20, 2025, there was an additional column entry that listed "china."   These two shipments listed the items shipped as "Gigabyte 4090," "TUF 4090," and "MSI 4090."   The other seven shipments list the items as "4090" and "5090."   I understand the reference to 5090 to refer to the NVIDIA GeForce RTX 5090 that is a GPU like the RTX 4090 model, which is classified as ECCN 4A090.a and would require a BIS export license to Hong Kong and China.

**b.  ▮▮▮▮  China-based Company**

64.   On August 28, 2024, the ▮▮▮ ACCOUNT sent an email to Mitac Computing Technology Corp. ("Mitac Computing") informing Mitac Computing of ▮▮▮ two companies: ALX Solutions, in the United States, which he described as specializing in high-performance computing/GPU solutions for customers all over the world, and Turing Intelligence Computing (Beijing) Ltd. ("Turing Intelligence"), in China, which he referred to as an AI and GPU solutions provider.

65.   According to my review of Mitac Computing's website, the company specializes in AI, high-performance computing, and cloud servers.   Mitac Computing is headquartered in Taiwan and operates manufacturing sites in the United States, China, Taiwan, and Vietnam.   According to a website (turing-agi.com)

for Turing Intelligence, the company is an AI/GPU solution
provider in China.  Furthermore, Turing Intelligence sells
Nvidia GPU products that are compatible with China's DeepSeek
large language models.

### e. Chinese Companies Inquire About Servers and GPUs

66.  During my review of the Google records, I also
identified instances of Chinese companies contacting the ███
ACCOUNT to inquire about purchasing NVIDIA GPUs.  On June 16 and
18, 2024, a representative from Telefly Telecommunications
Equipment Co., Ltd. ("Telefly") emailed the ███ ACCOUNT to
inquire about purchasing NVIDIA H100 GPUs.  The ███ ACCOUNT
did not respond to either email; however, the Telefly
representatives' email included WeChat, Whatsapp, and telephone
contact information.  According to a website (telefly.cn) for
Telefly, the company is located in Shenzhen, China and sells
computer hardware, communication equipment, and industrial
machinery.  Telefly's website also lists several NVIDIA GPU
models for sale, including the H100, H200, and A100.

67.  Separately, on July 14, 2023, the ███ ACCOUNT
received an email claiming that Baibaowu Information Industry
Co., Ltd. in China was seeking to do business with Super Micro
servers.  The ███ ACCOUNT did not respond by email.  However,
on July 28, 2023, the ███ ACCOUNT received an email from the
same address stating "Per discussed, I need place PO of 100*H800
computing power system that is supermicro brand."  Again the
███ ACCOUNT did not respond to the email; however, it appears

that the parties had an alternative means of communication since
a prior discussion was referenced.

### J.   Law Enforcement Searches ALX's Klingerman Office and Uncovers Additional Evidence of the Export Scheme

68.   On July 29, 2025, the Honorable Maria A. Audero,
United States Magistrate Judge, approved a warrant to search the
Klingerman Office, in case number 25-MJ-04722, as well as the
persons of ████ GENG, and YANG, in case numbers 25-MJ-04726,
25-MJ-04727, and 25-MJ-04728.

69.   On July 31, 2025, law enforcement searched the
Klingerman Office and found further evidence of the export
control scheme including Super Micro servers containing the
export-controlled Nvidia H100.

70.   During the search, and pursuant to the federal
warrant, law enforcement seized phones from GENG and YANG. I
have begun to review those phones with the aid of Mandarin
language linguists from the Federal Bureau of Investigation
("FBI").

71.   In reviewing YANG's phone, I have discovered
additional evidence of the scheme including the following:

a.   I have reviewed a group chat between YANG, GENG,
and ████ as well as two unidentified co-conspirators, in which
the group discusses the shipment of export-controlled items,
without a license, to China from in or about March 6, 2025 to in
or about July 29, 2025. Specifically, I have reviewed messages
from ████ in the group thread in which he directs GENG to ship
export-controlled items including the NVIDIA A100 to Guangzhou,

China. Also, within this thread, a co-conspirator asks why "don't you just ship directly to [unidentified co-conspirator]" who I understand to be a co-conspirator in China, to which ▊▊▊ says "It is restricted products…"

        b.   The group also appears to reference using third countries as intermediaries. For example, on or about March 21, 2025, YANG confirms to one of the unidentified co-conspirators, ". . . boss, this week, Malaysia shipped 2 packages (4090) . . ." Based on the context, conversation, and my training and experience, I believe YANG is referring to NVIDIA PNY GE Force RTX 4090 GPUs (like the ones found in the 9279 shipment described above that ALX Solutions attempted to ship to Malaysia in December 2024) being transshipped from Malaysia to China.

        c.   I have also reviewed text messages between YANG and ▊▊▊ in which they discuss the shipment of a "Quanta machine" that was picked up by a co-conspirator in the Bay Area. ▊▊▊ instructed YANG to "to pay attention to see if there is a tracker on it, you must look for it carefully Fuckin US Trump administration, who knows what they will do." Based on the conversation, and my training and experience, I understand ▊▊▊ to be referencing a Quanta H200, which as discussed above I understand to be export controlled. During that same text message conversation, ▊▊▊ instructs YANG to disassemble the "Quanta" server and then ship it to Malysia where it will then be shipped to China.

## VI.    **CONCLUSION**

72.  For all of the reasons described above, there is probable cause to believe that ▮▮▮▮▮▮ CHUAN GENG, and SHIWEI YANG, have committed Conspiracy to Violate the Export Control Reform Act and the Export Administration Regulations in violation of 50 U.S.C. §§ 4819(a)(1), (a)(2)(D), and 4819(b); and 15 C.F.R. parts 736.2(b)(1) and 774, Supp. No. 1.


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 1st day of
August, 2025.


_____
HON. JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE